UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN TOTIN,<br><br>                Plaintiff,<br><br>        - against –<br><br>BROWN HARRIS STEVENS RESIDENTIAL SALES, LLC and AARON MERIDY,<br><br>                Defendants. | Civil Action No. 1:22-cv-09392-JGK-SLC |

**PLAINTIFF'S COUNTER-STATEMENT TO DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Plaintiff, Brian Totin ("Totin"), submits this counter-statement in opposition to Defendant Brown Harris Stevens Residential Sales, LLC's ("BHS") Rule 56.1 statement.

1. This case involves certain copyrighted photographs referred to in the Complaint as the "Totin Copyrighted Works"2 (or the "Photos") depicting rental studio apartments #3SW and #3S at 137 West 83rd Street in Manhattan (the "Apartments"). Declaration of Babette E. Krolik dated October 27 ("Krolik Decl.")3 ¶ 2.

    Response:  Admitted.

2. Co-defendant Aaron (Ari) Meridy4 ("Mr. Meridy") was and is an independent contractor with BHS, not an employee, whose relationship, and scope of agency were delineated in an Independent Agent Agreement dated June 25, 2014 between them, annually renewed on

1

substantially the same terms (the "IAA"). Krolik Decl. ¶ 5 & Ex. A (Bates Ref. No. DDP0002-04). He is a Licensed Real Estate Salesperson. NYS Lic. No. 10401263950 (public record).

    Response:  Admitted that Mr. Meridy is a licensed Real Estate Salesperson. Remainder controverted. The relationship between Mr. Meridy and BHS is defined via Article 12-A of the New York Real Property Law and this statement ignores that fact (public record).

    3.    Under the IAA, "[a]ny title . . . shall not convey responsibility or authority" and he "shall not have the power to bind Broker [BHS]." Krolik Decl. ¶ 6 & Ex. A (Bates Ref. No. DDP0002-03).

    Response:  Controverted.  Agents may bind their associated broker under various laws and statutes, such as the laws of agency and vicarious liability, and under Article 12-A of the New York Real Property Law.

    4.    In subsequent years, Mr. Meridy signed additional Independent Agent Agreements with BHS. For the years 2021 and 2022, Mr. Meridy signed Independent Agent Agreements dated as of January 1, 2021. Krolik Decl. ¶¶ 4-5 & Ex. B (Bates Ref. DDP0082-84) and January 1, 2022 (Krolik Decl. ¶¶ 4-5 & Ex. C) (Bates Ref. DDP0085-87). Those agreements likewise provide that "[a]ny title or office granted Agent [Mr. Meridy] shall be honorific and shall not convey responsibility or authority. Agent shall not have the power to bind Broker [BHS]." Krolik Decl. ¶¶ 4-5 & Exs. B & C (Bates Ref. DDP0083, DDP0086).

    Response.  Admitted that Meridy signed IAAs with BHS.  Otherwise Controverted and see response to Statement 3.

5. They provide as follows:

> Broker shall provide Agent access, electronically or otherwise, to Broker's Manual and written policies and procedures, as modified from time to time, concerning the conduct of business, including without limitation commission computation, expenses, marketing, confidentiality, computer use, nondiscrimination, and other matters, ("Broker's Policies"). Agent agrees to comply with Broker's Policies. Agent confirms that Agent has been given the opportunity to review Broker's Policies in detail and will keep abreast of all updates provided by Broker, which shall be binding on Agent.

Krolik Decl. ¶¶ 8-9 & Exs. B & C ¶ 17 (Bates Ref. DDP0084, DDP0087) (italics in original).

Response: Admitted.

6. During his association with BHS, as a licensed real estate salesperson (NYS Lic. No. 10401263950) with BHS (since June 2014 to the present), Mr. Meridy was and is required "to comply with Broker's [BHS's] standard policies, procedures and manuals . . . including . . . those policies regarding . . . electronic communications . . . ." Krolik Decl. ¶ 10 & Ex. A (IAA § 16) (Bates Ref. DDP0004).

Response: Admitted.

7. Such policies, procedures and manuals specifically were the following: BHS's Independent Agent Policies, including BHS's Computer Use and Confidentiality Policy signed by Mr. Meridy, in effect at and subsequent to the commencement of Mr. Meridy's association with BHS (Krolik Decl. ¶ 10 & Ex. D (Bates Ref. DDP0006-24)) and BHS's "Policy Manual as of June 1, 2022", which included BHS's then current Computer Use and Confidentiality Policy,

(Krolik Decl. ¶ 10 & Ex. E) (Bates Ref. DDP0025-81)), which was in effect at the time(s) that the "Totin Copyrighted Works" were allegedly used. See Complaint ¶¶ 18, 28, 29.

Response: Admitted in part that the listed polices were a portion of the policies Mr. Meridy agreed to. Otherwise controverted. Multiple other polices Mr. Meridy agreed to, some of which were never produced in discovery by BHS, are referenced in the BHS "Policy Manual as of June 1, 2022" such as the "BHS Social Networking Guidelines" (Bates Ref. DDP0061).

8. On his part, Mr. Meridy confirmed that he "ha[d] been given an opportunity to review [BHS's] policies and manual, has done so or will do so promptly upon execution of this Agreement," as is required of all BHS agents. Krolik Decl. ¶¶ 9 & 12 & Ex. A (IAA § 16) (Bates Ref. DDP0004); see also Krolik Decl. Exs. B & C at ¶ 17 (Bates Ref. DDP0084, DDP0087).

Response: Admitted.

9. During the time that the "Totin Copyrighted Works" were allegedly used, BHS maintained its own website (https://www.bhsusa.com/) for its listings of real estate for rental and/or sale for which it had open or exclusive listings with the lessors/owners thereof (the "BHS website"). Krolik Decl. ¶ 13.

Response: Admitted.

10. The Totin Copyrighted Works were never on BHS website nor were used by BHS in any manner. Krolik Decl. ¶ 14.

Response: Admitted in part that The Totin Copyrighted Works were never on BHS website. Remainder controverted. BHS reproduced the Totin Copyrighted Works in a listing it authorized

4

on StreetEasy.com. (See Compl. ¶¶ 18, 19, Ex. C; see also Frisch Aff., ¶¶ 10, 12, 16 and Totin Decl. ¶¶ 9-12).

11. The "listings" on StreetEasy (https://streeteasy.com/) upon which the Totin Copyrighted Works (as collectively referred to in paragraphs 11, 12, 13, 18, 19 and 27 and Exhibits C and D of the Complaint) appeared were never on the BHS website, were not submitted to nor approved by its Marketing Department, nor on any advertising media of BHS, which would have required the use of a BHS "approved Photographer," which was not the case here. Krolik Decl. ¶ 15.

Response: Admitted in part that the listings on StreetEasy were never on the BHS website. Remainder controverted. Use of a BHS "approved Photographer" is only required by the BHS's "Policy Manual as of June 1, 2022", when "the Agent (has) secured a minimum six month exclusive or co-exclusive agency of the Listing." (See Bates Ref. DDP0047). The BHS's "Policy Manual as of June 1, 2022" contains no reference to a requirement that a listing be submitted to or approved by the BHS Marketing Department (See Bates Ref. DDP0026 - DDP0082). The "listings" on StreetEasy were advertising media of BHS. (See Compl. ¶¶ 18, 19, Ex. C; see also Frisch Aff., ¶¶ 10, 12, 16 and Totin Decl. ¶¶ 9-12).

12. "StreetEasy" is a website published and maintained by Zillow Group, Inc./Zillow, Inc. and their affiliated brands. See Zillow Real Estate Terms of Use | Zillow. BHS has no affiliation therewith. Krolik Decl. ¶ 16.

Response: Admitted.

13. Based on its business records, BHS itself did not actually have any listing (open, exclusive or otherwise) from the owner or manager of the Apartments, which would have required a written listing agreement. Krolik Decl. ¶ 17.

Response: Controverted. "There is no requirement that a real estate brokerage agreement be in writing". Eretz Realty, Ltd. v. Falcone Realty Corp., 2021 N.Y. Slip Op. 31660 (N.Y. Sup. Ct. 2021) citing Tanenbaum v. Boehm, 202 NY 293 (1911); Lane-The Real Estate Department Store, Inc. v. Lawlet Corp., 28 NY2d 36 (1971); Feinberg Bros. Agency Inc. v. Berted Realty Co., Inc., 70 NY2d 828, 830 (1987); Salahuddin v. Benjamin, 42 AD2d 522 (1st Dept 1973). The BHS's "Policy Manual as of June 1, 2022" does not require a written open listing agreement; it strongly advises one should be procured. (See Bates Ref. DDP0043).

14. BHS did not approve approved placement of the advertisement by Mr. Meridy, on StreetEasy or anywhere else. Nor was any such approval ever sought. Krolik Decl. ¶ 18.

Response: Controverted. In order for any salesperson or associate broker to advertise residential apartments for rental and sale on StreetEasy, their brokerage firm must first be set up to advertise listings on StreetEasy. It is widely known that when a Licensed Real Estate Broker sets itself up to advertise listings on StreetEasy, it is permitting the agents associated with that Licensed Real Estate Broker to place advertisements on StreetEasy. See Frisch Aff., ¶¶ 5-12.

15. BHS made no commission from any "listing(s)" using the Totin Copyrighted Works nor stood to receive any commission from any such "listing(s)." Krolik Decl. ¶ 19.

Response: Controverted. The statement of Babette Krolik on this subject is merely her opinion and is not supported by any underlying facts, or alleged facts. BHS, during discovery, refused to

6

provide an accounting for any of Meridy's commissions, which are business records BHS would have kept in the ordinary course of business. The truth of this statement of material fact can only be established through those business records.

16. Mr. Meridy made no commission, or any benefit, from BHS for any "listing(s)" using the Totin Copyrighted Works nor stood to receive any commission from any such "listing(s)." Krolik Decl. ¶ 21.

Response: Controverted. The statement of Babette Krolik on this subject is merely her opinion and is not supported by any underlying facts, or alleged facts. BHS, during discovery, refused to provide an accounting for any of Meridy's commissions, which are business records BHS would have kept in the ordinary course of business. The truth of this statement of material fact can only be established through those business records. Further, a reasonable trier of fact could find that the listings had the effect of directing traffic to BHS, where commissions could be borne from such additional traffic.

17. BHS did not pay for any "StreetEasy" listing (which charges for listings) of the Apartments, nor did it reimburse Mr. Meridy for any "listing" charge (nor was any sought), nor did BHS authorize, nor participate in any aspect of such "listing" of the Apartments by Mr. Meridy. Krolik Decl. ¶ 22.

Response: Partially admitted that BHS did not pay for any "StreetEasy" listing (which charges for listings) of the Apartments, nor did it reimburse Mr. Meridy for any "listing" charge. Remainder Controverted. BHS authorized and participated in the "listing" of the Apartments by

Mr. Meridy.  See Compl. ¶¶ 18, 19, Ex. C; see also Frisch Aff. ¶¶ 10, 12, 16 and Totin Decl. ¶¶ 9-12).

      18.      BHS's Policy Manual as of June 1, 2022 (Krolik Decl. 23 & Ex. E) (Bates Ref. DDP0025-81) (as in effect during the relevant time period) provides the following (Mr. Meridy being an "Agent" as referred to therein) which delineates how listings may and may not be done by agents:

      a.      "All Agents (sales persons or associate brokers) are engaged by BHS as independent contractors. The BHS Independent Agent Agreement (see Form 01: Independent Agents Agreement) specifies the terms of that engagement." Krolik Decl. Ex. E (Bates Ref. DDP0028).

      b.      "Agents must use an approved Photographer for all listing photography used by the Company. A list of all approved Photographers can be found on myBHS." Krolik Decl. Ex. E (Policy Manual § 5 (B) p. 22) (Bates Ref. DDP0047).

      c.      Computer Use & Confidentiality Policy

The Terra Holdings, LLC group of affiliated companies, which includes without limitation the Brown Harris Stevens, Vanderbilt and Halstead, companies (collectively, the "Company"), provides computer and electronic resources to employees and agents to conduct Company business. To ensure that these resources are used properly by its employees, independent contractors, agents, and other computer users, the Company has created this Computer Use Policy (the "Policy") to govern such use.

This Policy applies to all users ("Users"[6]) of the Company's computers, software, internet access, intranet, email and other digital/electronic resources, regardless of how Users

8

access the resources, or where Users may be located. This Policy applies to all Company offices, to connections from all remote locations, including Users' homes and elsewhere, and to all devices and software used to access Company Computer Resources, including phones, personal tablets and computers. This Policy pertains to the use of computer resources and the information transmitted, stored or made accessible through Computer Resources. Violations will be taken very seriously and may result in disciplinary action, including termination, and civil and criminal liability.

Policy Manual § X (A) p. 38 (boldface in original). Krolik Decl. Ex. E (Bates Ref. DDP0063).

      d.      Intellectual Property. All documents contained on or created using the Company's Computer Resources and associated intellectual property are Company property and Company Proprietary Information. Users may not reproduce or use information received through Computer Resources that may infringe on the intellectual property rights (copyright, trade secret, trademark, or patent) of others. In their use of Computer Resources, Users must comply with all software licenses, copyrights, and all other state, federal, and international laws governing intellectual property and online activities. Users must comply with the Company's software licenses and may not duplicate such software and its documentation or create derivative works therefrom. Users may not use, copy or distribute copyrighted or otherwise restricted information from the Internet. No software or applications may be installed or downloaded on to Computer Resources without the Company's prior written consent. Users must consult with Company professionals on the use of any third party content and comply with all restrictions on copying, use, and linkage to third party or copyright materials.

      Copyrighted material (whether or not copyright is registered) may not be used without express written permission of the owner of the copyright.

Policy Manual § X (A) pp. 39-40 (emphasis added). Krolik Decl. Ex. E (Bates Ref. DDP0064-65).

Response: Partially Admitted that the quoted words appear in BHS's Policy Manual as of June 1, 2022.  Otherwise controverted in that not all the words quoted pertain to listings.  (See Bates Ref. DDP0026 - DDP0082)

19. It is BHS's strict policy and practice that photographs of property that are posted its website are not to be used or reproduced without written permission from the copyright holder of such photographs. BHS uses, and only allows agents to use approved photographers for that purpose. Krolik Decl. ¶¶ 15 & 23(b).

Response:  Admitted to the extent that "BHS's policy and practice that photographs of property" "are not to be used or reproduced without written permission from the copyright holder of such photographs" only applies to the BHS's website.  Otherwise controverted.  Use of a BHS "approved Photographer" is only required by the BHS's "Policy Manual as of June 1, 2022", when "the Agent (has) secured a minimum six month exclusive or co-exclusive agency of the Listing."  See Bates Ref. DDP0047.

20. BHS did not pay any "listing fees" to Mr. Meridy in connection with the Apartments, nor were any sought. See Policy Manual § II (M) (Bates Ref. DDP0037-38). Krolik Decl. ¶¶ 22 & 26.

Response:  Controverted. The statement of Babette Krolik on this subject is merely her opinion and is not supported by any alleged facts.  BHS, during discovery, refused to provide an accounting for any of Meridy's commissions, which are business records BHS would have kept

in the ordinary course of business. The truth of this statement of material fact can only be established through those business records.

21. There was no BHS "Open Listing" or "Open Listing Agreement" for the Apartments. See Policy Manual § IV (B) p. 18. Krolik Decl. ¶ 27 & Ex. E (Bates Ref. DDP0043).

Response: Controverted. See response to Statement 13.

22. There was no BHS "Exclusive Listing" or "Exclusive Listing Agreement" for the Apartments. See Policy Manual § IV (A) p. 18. Krolik Decl. ¶ 28 & Ex. E (Bates Ref. DDP0043).

Response: Admitted.

23. There was no BHS "Limited Listing" for the Apartments. See Policy Manual § IV (C) p. 19. Krolik Decl. ¶ 29 & Ex. E (Bates Ref. DDP0044).

Response: Admitted.

24. There was no BHS "Ours Alone Listing" for the Apartments. See Policy Manual § IV (D) p. 19. Krolik Decl. ¶ 30 & Ex. E (Bates Ref. DDP0044).

Response: Admitted.

25. There was no BHS verbal listing or verbal listing agreement for the Apartments. See Policy Manual § IV (E) p. 19. Krolik Decl. ¶ 30 & Ex. E (Bates Ref. DDP0044).

Response: Controverted. See response to Statement 13.

26. The was no listing of any kind with or through BHS for the Apartments. Krolik Decl. ¶ 31.

Response: Controverted.  See response to Statement 13.

27. There was no mailing for a "new listing" for the Apartments, nor any other kind of mailing, whether by BHS or Mr. Meridy, nor any other type of mailing. See Policy Manual § V (A) pp. 20-22. Krolik Decl. ¶ 34 & Ex. E (Bates Ref. DDP0045-47).

Response: Admitted.

28. BHS, a "real estate broker," did not place or cause to be published any advertisement related to the sale or lease of the Apartments depicted in the Totin Copyrighted Works. Krolik Decl. ¶ 35.

Response: Controverted.  BHS placed or caused to be published an advertisement related to the sale or lease of the Apartments depicted in the Totin Copyrighted Works.  See Compl. ¶¶ 18, 19, Ex. C; see also Frisch Aff. ¶¶ 10, 12, 16 and Totin Decl. ¶¶ 9-12.

29. The Apartments were not listed with or represented by BHS. Krolik Decl. ¶ 36.

Response: Admitted that the apartment was not represented by BHS. Otherwise, controverted. See response to Statement 28.

30. BHS did not approve placement of any advertisement for the Apartments by Mr. Meridy. Krolik Decl. ¶ 37.

Response: Controverted.  See response to Statement 28.

31. Mr. Meridy, a "real estate salesperson," did not have approval from BHS for the placement of any such advertisement. Krolik Decl. ¶ 38.

Response: Controverted.  See response to Statement 28. .

32. Mr. Meridy did not have authority, actual or apparent, from BHS to use or publish the Totin Copyrighted Works. Krolik Decl. ¶ 39.

Response: Controverted.  See response to Statement 28. .

33. The foregoing is confirmed by the absence of any business records showing otherwise. Krolik Decl. ¶ 40.

Response: Controverted.  See response to Statement 28. .

34. The copies/duplicates referred to and annexed are genuine and authentic and are business records of BHS, i.e., records contemporaneously made, kept in the course of regularly conducted activity of business, and that making the records was a regular practice of that activity, certified as such. Krolik Decl. certification.

Response: Admitted.

35. Apart from Mr. Meridy's use of the Totin Copyrighted Works as alleged, there was no separate or independent use of them by BHS.

Response: Controverted.  See response to Statement 28.

36. Mr. Totin's claims against BHS are entirely based on his assertion that there was privity between BHS and Mr. Meridy. See Compl. ¶ 3 ("Defendants are a licensed real estate broker and one of their affiliated salespersons."); ¶ 9 ("Defendant AARON MERIDY ('Meridy') is a licensed real estate salesperson affiliated with Defendant BRG."); ¶ 26 ("Defendants are a licensed real estate broker and its affiliated salesperson."); ¶ 44 (asserting that "a Licensed Real Estate Broker is vicariously liable for sales associate misconduct.").

Response: Controverted.  See response to Statement 28. see also Totin Decl. ¶¶ 3, 4.

37. Mr. Totin has no evidence, none having been produced in discovery, that BHS authorized, approved or ratified any acts of Mr. Meridy with respect to the Totin Copyrighted Works or any advertisement(s) depicting them.

Response: Controverted. See response to Statement 36.

38. Mr. Totin has no evidence, none having been produced in discovery, that Mr. Meridy had actual authority from BHS to use the Totin Copyrighted Works.

Response: Controverted. See response to Statement 36.

39. Mr. Totin has no evidence, none having been produced in discovery, that Mr. Meridy had apparent authority from BHS to use the Totin Copyrighted Works.

Response: Controverted. See response to Statement 36.

40. Mr. Totin has suffered no actual damages from any use of the Totin Copyrighted Works, and has no evidence of any such damages, nor claims any in this action.

Response: Controverted. The infringing use of a competitor's copyrighted works causes *prima facie* damage. See 17 U.S.C. § 504, stating that a copyright infringer is liable for either the copyright owner's actual damages and any additional profits of the infringer . . . or statutory damages.

41. With respect to Mr. Totin's claims of copyright infringement as to BHS, he has no evidence, none having been produced in discovery, as to:

    a.     The alleged infringer's state of mind;

    b.     The expenses saved, and profits earned, by the alleged infringer;

    c.     The revenue lost by Mr. Totin as the copyright holder;

    d.     The deterrent effect on the alleged infringer and third parties;

    e.     The alleged infringer's cooperation or lack thereof in providing evidence concerning the value of the infringing material; and

    f.     The conduct and attitude of the parties.

Response: Controverted. Throughout this litigation, this Defendant has not provided any evidence concerning the value of the infringing material despite requests to do so and has done everything possible through frivolous conduct to delay and thwart Plaintiff's reasonable attempt to seek justice for Defendant's illegal conduct. (see Initial Disclosures of Defendant Brown Harris Stevens Residential Sales, LLC dated April 6, 2023 (and served three months late, with no production of required initial disclosures); Defendant Brown Harris Stevens Residential Sales, LLC 's Response To Plaintiff's Document Requests dated April 6, 2023 (and served two months

late, with impermissible objections and no production of required documents) Defendant Brown Harris Stevens Residential Sales, LLC's Response To Plaintiff's Interrogatories dated April 6, 2023 (and served two months late, with impermissible objections and evasive answers). Defendant further claims it uses professional photographers, but has not produced any evidence, such as a bill or invoice, that would help to establish the values of the photograph at question in this matter.  See Krolik Decl. Ex. E (Policy Manual § 5 (B) p. 22) (Bates Ref. DDP0047).

42.     All claims by Mr. Totin against Mr. Meridy have been dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(ii) by Stipulation dated July 24, 2023 approved by Order signed and filed August 14, 2023 (ECF Doc. No. 26).
Response: Admitted.

**ADDITIONAL DISPUTED FACTS**

43.     Contrary to Defendant's claims, there are genuine disputes of material fact at play.  Defendant claims that Mr. Meridy posted the photographs to Streeteasy on his own, however, the evidence shows that BHS authorized the posting of such listings on StreetEasy.com. (See Compl. ¶¶ 18, 19, Ex. C; see also Frisch Aff., ¶¶ 10, 12, 16 and Totin Decl. ¶¶ 9-12).

44.     Defendant claims it did not have a listing, and points to the absence of anything written as evidence; however, "There is no requirement that a real estate brokerage agreement be in writing". Eretz Realty, Ltd. v. Falcone Realty Corp., 2021 N.Y. Slip Op. 31660 (N.Y. Sup. Ct. 2021) citing Tanenbaum v. Boehm, 202 NY 293 (1911); Lane-The Real Estate Department Store, Inc. v. Lawlet Corp., 28 NY2d 36 (1971); Feinberg Bros. Agency Inc. v. Berted Realty Co., Inc., 70 NY2d 828, 830 (1987); Salahuddin v. Benjamin, 42 AD2d 522 (1st Dept 1973) .

The BHS "Policy Manual as of June 1, 2022" does not require a written open listing agreement; it only strongly advises one should be procured. (See Bates Ref. DDP0043).

45. Defendants claim that it "strictly and explicitly proscribes any such posting by agents, or other use of such photographs." Yet, its own policy manual states otherwise, and its prohibition against copyright infringement only applies to the BHS website. See Totin Decl. footnote 1, (BHS Policy Manual § 9 (B)).

46. The Use of a BHS "approved Photographer" is only required by the BHS "Policy Manual as of June 1, 2022", when "the Agent (has) secured a minimum six month exclusive or co-exclusive agency of the Listing." See Bates Ref. DDP0047. The BHS's "Policy Manual as of June 1, 2022" contains no reference to a requirement that a listing be submitted to or approved by the BHS Marketing Department. See Bates Ref. DDP0026 - DDP0082.

47. A "licensed broker is explicitly responsible for the supervision and control of activities conducted in the name of the licensed real estate business." See Totin Decl. ¶ 4.

Dated: New York, New York
       November 13, 2023

                                        Respectfully Submitted,
                                        **Loaknauth Law, P.C.**

                                        /s/ Nicholas Loaknauth
                                        Nicholas Loaknauth (NL0880)
                                        Attorney for Plaintiff
                                        **BRIAN TOTIN**
                                        1460 Broadway
                                        New York, NY 10036
                                        Tel: (212) 641-0745
                                        Email: nick@loaknauthlaw.com